COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Overton
Argued at Alexandria, Virginia


DAVID L. FORRESTER
                                      MEMORANDUM OPINION[*] BY
v.    Record No. 0348-02-4           JUDGE NELSON T. OVERTON
                                           OCTOBER 22, 2002
PHYLLIS E. RIENZO-FORRESTER


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   M. Langhorne Keith, Judge

           Robert D. Dain (Cherise Dyann Cuevas; Dain,
           Oxley, Markley & Nicoli, P.L.L.C., on
           briefs), for appellant.

           Susan Massie Hicks (Susan Hicks & Associates,
           P.C., on brief), for appellee.


     David L. Forrester, father, appeals the decision of the

trial court awarding sole legal custody and sole physical

custody of the parties' two children to Phyllis E.

Rienzo-Forrester, mother.  Father contends the trial court erred

in:  (1) failing to consider all of the factors of Code

§ 20-124.3 in awarding sole custody to mother; (2) determining

the quantity of visitation awarded to father; (3) finding that

mother was and is the primary caregiver of the children and that

mother and father are unable to cooperate on issues involving

the children; (4) failing to consider father's payment of

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

one-half of the mortgage payment on the jointly owned marital residence as a deviation in calculating child support; (5) ordering father's continuing payment of one-half of the mortgage; and (6) determining the amount of child support awarded to mother. Mother also requests attorney's fees incurred in this appeal. Finding that the trial court did not err, we affirm the decision of the trial court. We also deny mother's request for attorney's fees.

## FACTS

The parties were married for about fifteen years. They have two children, who were twelve and eight years old at the time of the November 20, 2001 custody hearing. At that time, the court had ordered exclusive use of the marital residence to mother. Father continued to pay one-half of the mortgage payment.

Mother is a computer sales representative who works about sixty percent of the time out of her home office. She has a flexible work schedule, allowing her to attend children's functions during the day. Mother's annual income was about $130,000 in 2001. Mother earned $300,000 the previous year, but she indicated that she had cashed some stock options during that year, which were added to her income. Mother also stated that the field of technology sales is now "difficult."

-

Mother testified that, during the marriage, she performed about eighty to ninety percent of the household activities and care of the children. She did the family's laundry, grocery shopping, and cooking. Both parties drove the children to and from activities.

Prior to the custody hearing, the parties had reached several mutual agreements concerning child custody and visitation, but mother testified there had been problems with overnight visitation with father during the school year. Mother stated that the children would get less sleep, lack school supplies, and generally have less stability in their lives when they stayed with father overnight during the school week. Mother also testified concerning several incidents where father made last minute changes to planned visitation schedules. Mother described father as a "reasonably good parent."

Mother testified she would encourage the children to spend as much time as possible with father in the future. However, she also stated that she believes father uses "poor judgment sometimes." She gave examples such as when he left the children unattended in the home.

On one occasion when father expressed a desire to have the children visit his therapist, mother took the children to her parents' home in Fredericksburg and advised father that she refused to return with the children until he agreed not to take

-

them to his therapist.  Father obtained an emergency custody hearing for the next day, and the parties then entered a "fifty-fifty" custody schedule.

Several of mother's friends testified that mother is a good parent and often attends functions with the children.  Several witnesses testified on father's behalf, but most of the witnesses knew father through work or tennis relationships and had not witnessed many interactions between him and the children.

Mother requested that she have custody of the children during the school week since she has been their primary caregiver and so that the children would have stability and consistency in their lives.

Father testified that he earns about $91,250 per year. Father testified he has been close to the children their whole lives, and he had an "equal important part" in their parenting. He stated that he changed diapers, attended soccer games and swimming lessons, and read books on parenting, children's development, and discipline.  Father testified he meets the children's emotional and intellectual needs and is involved in their activities.  Father described himself as caring and loving and stated that he has not interfered with the children's relationship with their mother, although he and mother have had disagreements on certain issues.

-

Father believes he has been flexible with visitation changes requested by mother. He testified that mother has unreasonably denied him access to the children on two occasions. There was also an altercation between the parties which resulted in mother being arrested. The charges were later dropped.

Father stated he has attempted to communicate with mother "via whatever medium [she] will accept." He has used e-mail, voice mail and telephone calls. The parties have used a mediator in an effort to determine visitation issues, but were unable to resolve the issues. Father stated that the children love to visit him overnight.

Father testified that his job offers a flexible schedule, allowing him to attend activities with the children. Father disagreed with mother's testimony that the children get less sleep when they stay with him during the week.

Father asked for shared custody and presented a proposed visitation schedule.

The trial court awarded mother sole legal and physical custody of the children. The court then established a visitation schedule. The trial court stated:

> I've considered the appearance in the manner
> of the witnesses on the stand and the
> credibility of all the witnesses in making
> this decision. And in particular course
> I've considered all the factors in [Code
> § ] 20-124.3. But in particular, and I'll

-

> mention these factors, three, four, five and
> seven.

The court found that both parents had a "strong relationship" with the children and "there's certainly no way the scales come down one way or the other on that issue." The court further found that the ability to accurately assess the needs of the children favored mother. The trial court found that father's request for an "equitable division of time" seemed to focus on father's needs and not the children's needs. The court expressed concern that father on occasion made decisions "of questionable judgment" concerning the children.

The trial court found mother's testimony that the children need stability to be "very credible." The court also found that, while father "had a major role in the upbringing" of the children, mother "had been and continues to be the primary caregiver." The court stated that both parents are "extremely willing and have demonstrated that willingness to maintain a close relationship." However, the trial court found the evidence was "overwhelming" that the parents "do not cooperate and can't resolve their disputes." The court stated that this was one of the "major factors" it considered in deciding that shared custody was "just not an option" in the case.

The trial court found that mother's income is $11,397 per month and father's income is $7,627 per month. Work-related

-

child care costs are $339 per month, and medical insurance is $43 per month, which mother pays. The court ordered father to pay mother $970 per month in child support. The court also ordered that father continue to pay one-half of the monthly mortgage payment until the parties resolve equitable distribution issues.

The trial court stated that the parties should resolve the equitable distribution issues as quickly as possible so that one party would take over the mortgage payment or the parties would sell the house "or whatever they agree upon."

### ANALYSIS

> On appeal, we review the evidence in the light most favorable to the prevailing party below. . . . Where the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court.

Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 336, 417 S.E.2d 1, 2 (1992).

When determining which parent should have custody the trial court must decide what is in the best interests of a child and it is required to consider the factors listed in Code § 20-124.3. The trial court is not required to quantify or elaborate on what weight or consideration it has given to each of the factors in Code § 20-124.3 or to weigh each factor equally. See Sargent v. Sargent, 20 Va. App. 694, 702, 460

-

S.E.2d 596, 599 (1995).  The trial court is vested with broad discretion to safeguard and promote the child's interests, and its decision will not be reversed unless plainly wrong or without evidence to support it.  See Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990).

The record demonstrates that the trial court carefully considered and weighed the evidence and considered the factors set forth in Code § 20-124.3.  In its ruling from the bench, the court elaborated on factors three, four, five and seven of the statute.  Furthermore, the trial court's decision focused on the best interests of the children.

The record indicates that both parents have a strong bond with the children; however, the trial judge found mother was and is the primary caregiver.  Moreover, the record shows that the parties are often unable to resolve disputes concerning the children, supporting the trial court's finding that a shared custody arrangement is not feasible.  The parties were unsuccessful in their attempt to resolve custody and visitation issues through the use of a mediator.  In addition, the trial court heard evidence of police intervention during one altercation between the parties.  On another occasion, a dispute between the parties concerning the care of the children resulted in an emergency custody hearing.  There were accusations that the parties exchange messages with one another, telling the

-

other parent of a change in plans instead of communicating and resolving issues. Thus, the custody decision of the trial court was not plainly wrong or without evidence to support it.

Determination of visitation rights is a matter of judicial discretion. Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986). This Court will not set aside the trial court's decision on visitation unless plainly wrong or without evidence to support it. Farley, 9 Va. App. at 328, 387 S.E.2d at 795.

The trial court ordered that father have visitation on alternate weekends and on two evenings during the school week. The trial court declined to order a shared custody arrangement for the summer months for the same reasons it declined to order a shared custody arrangement for the school year. The court ordered an equitable and alternating division of the children's summer vacation time, and it ordered the parties to split or alternate holidays. Given the trial court's finding that the children need stability in their lives and that a shared custody arrangement is not feasible in this case, the visitation schedule was not an abuse of discretion.

"[D]ecisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Barnhill v. Brooks, 15 Va. App. 696, 699, 427 S.E.2d 209, 211 (1993). "A

-

rebuttable presumption exists that the amount derived from the guidelines, Code § 20-108.2, is correct."  <u>Auman v. Auman</u>, 21 Va. App. 275, 277, 464 S.E.2d 154, 155 (1995).

Father did not rebut the presumption that the amount of child support derived from the guidelines is correct.  The trial court determined mother's salary based on her most recent income figures.  No evidence indicated that mother is voluntarily underemployed.  Rather, her sales income fluctuates with market conditions.  Thus, no evidence indicates that the presumptive amount of child support was unjust or inappropriate.

The trial court also ruled that the parties would continue to split the monthly mortgage payment until an equitable distribution hearing was scheduled.  Evidence was presented that the parties had previously agreed to this arrangement, and no equitable distribution hearing had been scheduled.  Although Code § 20-108.1(14) provides that the court may consider provisions made pursuant to the equitable distribution statute when determining whether to deviate from the presumptive child support guidelines, here, there had been no property distribution at the time the court decided the support issues.  Therefore, the trial court did not err in ruling that the parties continue to evenly divide the monthly mortgage payment until the equitable distribution hearing and that this

arrangement would have no effect on the calculation of child support at this time.

Mother requests attorney's fees expended on this appeal. "We have said that 'the key to a proper award of counsel fees . . . [is] reasonableness under all of the circumstances revealed by the record.'" Westbrook v. Westbrook, 5 Va. App. 446, 458, 364 S.E.2d 523, 530 (1988) (citation omitted). Father had reasonable grounds for this appeal. Therefore, mother's request is denied. See Gayler v. Gayler, 20 Va. App. 83, 87, 455 S.E.2d 278, 280 (1995).

Accordingly, the decision of the trial court is affirmed.

Affirmed.

Fitzpatrick, C.J., concurring, in part, and dissenting, in part.

I concur with the opinion in matters other than the attorney's fee issue.  I would remand for an assessment of partial attorney's fees incurred in this appeal as father did not have reasonable grounds for all of his issues.